Filed
File Date: 8/20/2025 11:46 AM
Rockingham Superior Court
E-Filed Document

EXHIBIT A

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS.                                                      SUPERIOR COURT

Case No.  218-2025-CV-00955

James and Elizabeth Hewitt
726 Middle Road
Portsmouth, NH  03801

v.

City of Portsmouth, NH
1 Junkins Avenue
Portsmouth, NH  03801

&

Karen Conard, City Manager
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Morrell, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Woodland, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Mayor Deaglan McEachern, City Councilors John Tabor, Vincent Lombardi,
Richard Blalock, Elizabeth Moreau, Katherine Cook
1 Junkins Avenue
Portsmouth, NH  03801

**COMPLAINT AND REQUEST FOR JURY TRIAL**

1

This is a Service Document For Case: 218-2025-CV-00955
Rockingham Superior Court
8/21/2025 3:52 PM

Plaintiffs James and Elizabeth ("Liza") Hewitt complain as follows against the Defendants and request a jury trial:

Introduction

1. The Defendants, collectively and individually, sought to remove Mr. Hewitt from his position as a volunteer Planning Board member without just cause, alleging malfeasance by him without any foundation for such a claim. In doing so, the Defendants conspired to violate Mr. Hewitt's rights of free speech, initiate a malicious civil prosecution, and defame Mr. Hewitt in the eyes of the public.

2. The City Council correctly found him not guilty of malfeasance and kept him in office. However, the emotional distress and public humiliation he suffered during his trial based on no substantial evidence has damaged him, and his spouse, Liza Hewitt, in an amount within the jurisdiction of this Court.

Parties

3. Plaintiffs James and Elizabeth Hewitt, 726 Middle Road, Portsmouth, N.H. 03801

4. Defendant City of Portsmouth, 1 Junkins Avenue, Portsmouth, N.H. 03801.

5. Defendant Karen Conard, City Manager, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

6. Defendant Susan Woodland, Assistant City Manager, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

7. Defendant Susan Morrell, City Attorney, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

8. Defendants Deaglan McEachern, Mayor, and John Tabor, Richard Blalock, Katherine Cook, Elizabeth Moreau, and Vincent Lombardi are City Counselors employed at 1 Junkins Avenue, Portsmouth, N.H. 03801.

Jurisdiction and Venue

9. The Court has jurisdiction of this matter as a claim for damages falling within the scope of RSA 491:7. Venue is appropriate in Rockingham County as the Plaintiffs and all Defendants reside or are employed in Rockingham County.

Facts

10. James Hewitt was appointed as a volunteer member of the Portsmouth Planning Board for a three term by outgoing Mayor (and member of the City Council) Rick Becksted at the end of Mr. Becksted's term in December 2021.

11. Mr. Hewitt is a licensed professional civil engineer with decades of experience in land development engineering, municipal water and wastewater, and transportation systems management, planning and zoning. He was employed by the New Hampshire Department of Transportation during the time he served on the Planning Board.

12. At the time of Mr. Hewitt's appointment in December 2021, City Council elections had been held a month earlier in November 2021, and a new slate of City Council members had been elected. Mr. Hewitt had actively worked to defeat all nine of the newly elected City Council members, including the new Mayor, Deaglan McEachern. The new slate of City Council members took office in January 1, 2022, around the same that Mr. Hewitt assumed his role as a new volunteer Planning Board member.

13. During the 2021 City Council election, Mr. Hewitt had been politically active in an organization known as the Portsmouth Citizen Alliance which sought to defeat all nine of the winning members of the 2021 City Council election, including the new Mayor, because he was opposed to the direction that the new City Council intended to take the City of Portsmouth.

14. Following the election and Mr. Hewitt's appointment, Assistant City Manager Susanne Woodland strongly advised outgoing Mayor Rick Becksted not to nominate Mr. Hewitt. She said Mr. Becksted was going to "ruin his future political career" if he went through with putting Mr. Hewitt on the Planning Board.

15. Later in December 2021 or early in January 2022, before he had sworn in, Portsmouth Department of Public Works Director Peter Rice called Mr. Hewitt's direct supervisor at NHDOT, Brian Schutt, asking if NHDOT had any policies that prohibited NHDOT staff from being on a local planning board.

16. Despite these pressures, and believing that he had a voice and a mandate due to his having been duly appointed, Mr. Hewitt swore in as a volunteer Planning Board member in January 2022.

17. Mr. Hewitt had not the slightest objection to the thoughtful development of the City, whether it be increased housing, more buildings, or more activity. However, he made no secret of the fact that he believed that, in some cases, the City was being developed imprudently, with the approval of sites and buildings taking place without sufficient parking or with significant environmental concerns. He believed that these legitimate concerns were not being addressed or mitigated through land use department approval conditions.

18. His appointment to the Planning Board by the previous mayor and council reflected an implicit understanding that he had these perspectives on the City's development and that these were valuable perspectives to have on the Planning Board as the City grew and changed.

19. Mr. Hewitt believed that the Planning Department and other City Hall staff, including the City Attorney's Office and the City Manager, were circumventing citizen review of development projects by working out plans with developers outside the public hearing process, limiting the information made available to citizen land use board members at the time developers sought project approval at land use board meetings.

20. While the City's approach to limiting information made available to land use boards may or may not have been lawful, Mr. Hewitt was opposed to it. In Mr. Hewitt's opinion, the lack of relevant information being provided to Planning Board members by City Planning Department staff was harming the public by allowing projects to move forward without including all the information the Planning Board needs to make an informed decision.

21. In essence, Mr. Hewitt believed that the City's professional land use and development staff were boxing out the citizen board members from information necessary to informed decision-making. Mr. Hewitt believed that citizen land use boards needed to assert their authority, because they had become, to a substantial extent, merely a box-checking exercise once the City's planning and legal teams had completed their work.

22. While these concerns animated Mr. Hewitt's desire to join the Planning Board, they were fundamentally process issues that he believed would make the process of land use board consideration of proposals more complete and more responsive to the public. He

considered every issue on the merits of the evidence, and indeed, voted to approve 95% of the applications that were heard by the Portsmouth Planning Board during his tenure, subject to appropriate conditions as necessary.

23. From January 2022 to January 2024, Mr. Hewitt served the City of Portsmouth faithfully as a volunteer Planning Board member and had eleven months remaining on his three-year term when the Defendants sought to remove him from the Planning Board.

24. The City of Portsmouth attempted to remove Mr. Hewitt by asking the City Council on January 16, 2024 for a "Public Hearing Pursuant to RSA 673:13 for the Removal of James Hewitt from the Planning Board." *See* Portsmouth City Council Agenda January 16, 2024.

25. On January 16, 2024, Defendant City Council members Mayor McEachern, Tabor, Moreau, Blalock, Lombardi and Cook voted to hold the requested removal hearing. City Council members Denton and Bagley did not support the request. Assistant Mayor Kelley was absent on January 16, 2024 at the City Council meeting.

26. On information and belief, on January 25, 2024 the City Attorney, under the direction and or/coordination with the City Manager and Susan Woodward, filing a "Charging Document" in public as part of the City Council agenda for the removal hearing.

27. The "Charging Document," an indictment in all but name, was entitled, "Malfeasance in Office" and alleged that Mr. Hewitt, in the course of his duties as a Board member, sent eight emails over two years to the city planning and zoning department and to other board members seeking information or providing information about projects then under consideration before the Planning Board. The Defendants claimed that these emails showed that

he "acted as an independent investigator, researcher and advocate, thereby exhibiting bias in certain matters." *See* Charging Document.

28. The January 25, 2024 Charging Document was an itemization of alleged acts of malfeasance by Mr. Hewitt and should have been reviewed, discussed and voted by the City Council as a personnel matter in a non-public session as required by RSA 91-A:3. Having these allegations of malfeasance presented to the public as fact in the City Council meeting packet and made widely available on the internet on January 25, 2024 caused Mr. Hewitt to be falsely maligned, disparaged and defamed. Neither the Charging Document nor any part of the City Council's meeting packet for the special meeting set for February 12, 2024 included Mr. Hewitt's responses to the charges. The City gave Mr. Hewitt no equivalent means of publicly answering the groundless allegations. They sat in the public square for eighteen days while Mr. Hewitt had to remain silent.

29. On February 8, 2024, Mr. Hewitt's counsel provided answers and an accompanying memorandum in response to the Charging Document ostensibly to be provided to the City Council in anticipation of the February 12, 2024 hearing to remove him. The material provided to the City Council in advance of the hearing by the City's professional staff included the Charging Document and relevant exhibits, but included only a hyperlink to the documents provided by Mr. Hewitt, including his answers to the charges. At no point prior to the February 12, 2024 hearing was Mr. Hewitt able to publicly rebut the City's unfounded charges on the City of Portsmouth website.

30. In the Charging Documents, the City alleged that Mr. Hewitt sent or received emails and sought information from sources it deemed irrelevant to different project applications.

It deemed his efforts to bring more information about the projects seeking approval into the public deliberation "improper" and accused him of violating the "jury standard."

31. The entire basis of the Defendant's justification to remove Mr. Hewitt from the Planning Board lacked probable cause and was a gross misapplication and abuse of the law. The Defendant's basis for Mr. Hewitt's removal relied exclusively on RSA 673:14, which is the basis for a land use board member to recuse themselves from a particular case and has no relevance to removal from office. RSA 673:13 is the only appropriate law to justify the removal of a land use board member.

32. In fact, the emails in question were well within his authority as a Board member and did not create the reality or impression of bias.

33. In addition, the City alleged that his effort to obtain *public information* about his neighbor's compliance with the City's permit conditions for an approved project was an abuse of his power as a board member.

34. News of these "charges" against Mr. Hewitt spread widely in Portsmouth, garnering substantial traditional press and online media coverage, and extensive community discussion on social media.

35. While the emails may or may not have conformed with what the City would have wanted to see in an email communication, they were not a violation of New Hampshire law, nor were they malfeasant as a matter of law. In fact, there was no probable cause to allege malfeasance based on Mr. Hewitt's diligent effort to be a competent Planning Board member. And yet, this would not have been the understanding of a reasonable citizen who heard only that Mr. Hewitt had been accused of bias and malfeasance.

36. These public allegations of malfeasance and media coverage caused Mr. Hewitt and Ms. Hewitt, a loving couple married for 36 years, to suffer deep emotional distress.

37. Mr. and Mrs. Hewitt experienced anxiety, tears, sleeplessness, restlessness, nausea, high sensitivity, depression and despondency before, during and after these proceedings.

38. After 11 hours of public hearings over two consecutive nights, with testimony from multiple witnesses and argument from counsel, the City Council acquitted Mr. Hewitt of malfeasance by a vote of 7-1.

39. To this day eighteen months later, Mr. and Mrs. Hewitt remain distressed and disturbed by the reckless manner in which the city callously maligned Mr. Hewitt's public reputation, and their distress continues to cause tears, sleeplessness, anxiety and reluctance to appear in public.

**Count I: Malicious Civil Prosecution**

40. The foregoing paragraphs are incorporated herein.

41. In order to prevail on a civil malicious prosecution claim, the plaintiff must prove: (1) that he was subjected to a civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) that the proceedings terminated in the plaintiff's favor. *Paul v. Sherburne*, 153 N.H. 747, 749 (2006).

42. Mr. Hewitt was subjected to a civil proceeding instituted by the Defendants in an effort to remove him from office.

43. The Defendants, when they initiated the underlying removal action against Mr. Hewitt, did not possess such a knowledge of facts as would lead a person of ordinary caution or prudence to believe that they had a cause of action against Mr. Hewitt.

44. The Defendants initiated the underlying removal action pretextually, with actual malice, because they knew, or were indifferent to the truth of the matter, or should have harbored substantial doubts, that their grounds for doing so were insufficient to create probable cause.

45. The Defendants initiated the underlying removal action pretextually, because Mr. Hewitt was appointed by the previous Mayor, both of whom were political opponents of the elected official Defendants, and was providing unwelcome (to them) public scrutiny of the City's development decision-making.

46. Mr. Hewitt obtained a favorable result from the trier of fact, the City Council.

47. While Mr. Hewitt appreciates that result and believes it was the proper decision, the near-unanimous vote, in addition to the decision itself, underscores how the removal hearing lacked probable cause and was undertaken with malice.

48. As a consequence of the Defendant's actions, individually and collectively, Mr. Hewitt has been damaged in an amount within the jurisdiction of the Court.

### Count II: Defamation and Defamation *Per Se*

49. The foregoing paragraphs are incorporated by reference.

50. In *Carpenter v. Bailey*, 56 N.H. 283 (1876) recognized a cause of action for libel from the promulgation of a removal proceeding that lacked probable cause.

51. The Charging Document and related removal hearing were libelous because they degraded, injured and brought Mr. Hewitt into contempt and ridicule, and accused him of the odious or disgraceful act of malfeasance.

52. The Charging Document and related removal hearing were not published on a lawful occasion because instead of acting in good faith, the Defendant acted pretextually, using

the removal hearing as a pretense to circulate defamatory matter about Mr. Hewitt, whose views and approach to public service the City opposed.

53. The Charging Documents and the removal hearing did not assert truthful allegations of malfeasance, but rather, at best, modest incompatibility with the City's preference for email communications.

54. The Charging Documents and the removal hearing were not made in good faith, with a belief founded on reasonable grounds of their truth, because no reasonable person could conclude that Mr. Hewitt's handful of communications were "malfeasance" under any reasonable definition of the word, let alone the legal definitions of the word as applied in actual cases of malfeasance.

55. The Defendants acted with legal and actual malice towards Mr. Hewitt by asserting that the emails and communications in question were "malfeasance" when they knew, or should have harbored serious doubts about, that the emails and communications in question were not malfeasant.

56. As a consequence of the City's intentional or reckless or negligent words, Mr. Hewitt has suffered damages *per se* to his reputation as an appointed public land use board member in an amount within the jurisdiction of the Court.

57. As a consequence of the City's intentional or reckless or negligent words, Mr. Hewitt has suffered special and general damages from the damage to his reputation as an individual and a public servant, in an amount within the jurisdiction of the Court.

### Count III: Intentional and/or Negligent Infliction of Emotional Distress

58. The foregoing paragraphs are incorporated herein.

59. The Plaintiffs, Mr. and Mrs. Hewitt, are a married couple. They raised three sons together over 36 years of marriage, co-habitation, common labor and common purpose.

60. Mr. and Mrs. Hewitt have experienced, in addition to special and general damages and pain and suffering, specific emotional distress arising from the Defendants' negligent, reckless or intentional statements and prosecutorial actions.

61. Their emotional distress has manifested itself through physical symptoms, for each of them, of sleeplessness, heartburn, nausea, headaches, distraction, jumpiness, fear, anxiety and other symptoms.

62. The Defendants' Charging Document and removal hearing were negligent, intentional or reckless statements and/or acts, that were, *inter alia*, unsupported by legal authority.

63. The Defendants' Charging Document and removal hearing were extreme and outrageous acts or statements.

64. The Defendants' Charging Document and removal hearing caused the Plaintiffs to suffer severe emotional distress, both directly by Mr. Hewitt and indirectly and vicariously by Ms. Hewitt, who had to stand by and watch the City smear and disparage her husband of 36 years.

65. As a consequence of the Defendants' conduct, the Plaintiffs have suffered emotional distress with physical symptoms, and/or severe emotional distress, entitling them to damages in an amount within the jurisdiction of the Court.

**Count IV: Enhanced Compensatory Damages, Attorney's Fees and Costs**

66. The foregoing paragraphs are incorporated herein.

67. Under New Hampshire law, a jury may award enhanced compensatory damages when the Defendants' acts were "oppressive, wanton or malicious." *Panas v. Harakis*, 129 N.H. 591 (1987).

68. The nature of the Defendants' statements in the Charging Document and the removal hearing was oppressive, wanton and malicious. Therefore, the Plaintiffs are entitled to enhanced compensatory damages.

69. In addition, the Plaintiffs are entitled to attorney's fees for bad faith conduct. *See* RSA 507:15; *Harkeem v. Adams*, 177 N.H. 687 (1977); *Funtown USA, Inc. v. Town of Conway*, 129 N.H. 352 (1987) (awarding fees not just for conduct during the pendency of litigation, but for pre-litigation vexatiousness).

## Count V: Claims under 42 U.S.C. §1983

70. The foregoing paragraphs are incorporated herein.

71. The attempt by the Defendants to have Mr. Hewitt removed from his public office was a violation of his First Amendment right to speak on issues of public concern. The victim of such a violation may seek recovery under 42 U.S.C. ¶1983.

72. Mr. Hewitt was a public employee for the purposes of §1983. "A public employee's retaliation claims for engaging in activity protected by the First Amendment must be evaluated under a three-step process. First, the plaintiff must establish that the activity in question was protected. For this purpose, the plaintiff must speak as a citizen on a matter of public concern. The plaintiff then must demonstrate that his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it

provides through its employees." *Snelling v. City of Claremont*, 155 N.H. 674, 678 (2007) (citations omitted).

73. Mr. Hewitt meets this test because his speech was protected and his interest in being able to speak outweighed any interest the City of Portsmouth had in the format and content of his emails.

74. Second, the Plaintiff must show that the protected activity was a motivating factor in the alleged retaliatory action. *Id*. Mr. Hewitt's emails and communications, which constituted only an effort to fully discharge his duties, are protected by the First Amendment and were, in fact, the basis of the Defendants' Charging Document and removal hearing.

75. The Defendants cannot rebut the Plaintiffs' claims by demonstrating that it would have reached the same decision absent the protected conduct because the protected conduct was the ground for the Defendants Charging Document and removal hearing.

76. As the Defendant City's conduct prior to Mr. Hewitt's appointment demonstrates, the Defendant professional staff members of the City of Portsmouth opposed his appointment and attempted to intervene in overt and covert ways to prevent it, including lobbying Mayor Becksted not to appoint Mr. Hewitt and contacting Mr. Hewitt's employer in a communication that can only be viewed as implicitly threatening.

77. As a consequence of the City's violation of Mr. Hewitt's First Amendment rights, Mr. Hewitt has been damaged in an amount within the jurisdiction of the Court, entitling him to damages, punitive damages, attorneys' fees and costs. 42 U.S.C. §1983; 42 U.S.C. §1988.

78. THE PLAINTIFFS REQUEST A JURY TRIAL.

WHEREFORE, the Plaintiffs request that the Court:

A. Hold a jury trial in this matter;

B. Award damages and enter judgment in an amount within the jurisdiction of the Court;

C. Grant such other and further relief as the Court deems just and equitable.

                              Respectfully Submitted,

                              JAMES AND ELIZABETH HEWITT

                              By their Attorneys,

                              ORR & RENO, P.A.

Date:  August 20, 2025                By:     */s/ Jeremy D. Eggleton*
                                                Jeremy D. Eggleton, Esq.
                                                (NH Bar No. 18170)
                                                45 S. Main Street, Suite 400
                                                P.O. Box 3550
                                                Concord, NH  03302-3550
                                                Phone:  603-224-2381
                                                Fax:  603-224-2318
                                                jeggleton@orr-reno.com