THE STATE OF NEW HAMPSHIRE
SUPERIOR COURT
ROCKINGHAM  COUNTY

    I, Patrice Touma , Clerk of the Superior Court of the State of New Hampshire for the County of ROCKINGHAM, the same being a court of record having a seal, and having custody of the records of the said Superior Court, do hereby certify that the attached are true copies of the Certified Copy Complaint, Certified Copy Appearance of Jeremy Eggleton Esq, Certified Copy Appearance of Michaela Dunn Esq, Certified Copy Summons on Complaint, Certified Copy Notice- Removal to Federal Dist Ct in the action case # 218-2025-CV-00955 Elizabeth Hewitt, James Hewitt v. City Councilor Elizabeth Moreau, City Councilor John Tabor, City Councilor Katherine Cook,    City Councilor Richard Blalock, City Councilor Vincent Lombardi, City of Portsmouth, NH, Karen Conard, City Manager, Mayor Deaglan McEachern, Susan Morrell, City Attorney, Susan Woodland, City Attorney.
 of said Superior Court.

In witness whereof I have hereunto set my hand
and affixed the seal of said Superior Court at
this 19th day of September A.D. 2025



Clerk of Superior Court

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS.                                    SUPERIOR COURT

Case No.   218-2025-CV-00955

James and Elizabeth Hewitt
726 Middle Road
Portsmouth, NH  03801

v.

City of Portsmouth, NH
1 Junkins Avenue
Portsmouth, NH  03801

&

Karen Conard, City Manager
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Morrell, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Woodland, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Mayor Deaglan McEachern, City Councilors John Tabor, Vincent Lombardi,
Richard Blalock, Elizabeth Moreau, Katherine Cook
1 Junkins Avenue
Portsmouth, NH  03801



True Copy Attest

*Patrice Touma*

Patrice D. Touma
Clerk of Court

September 19, 2025

**COMPLAINT AND REQUEST FOR JURY TRIAL**

1

Plaintiffs James and Elizabeth ("Liza") Hewitt complain as follows against the Defendants and request a jury trial:

Introduction

1.      The Defendants, collectively and individually, sought to remove Mr. Hewitt from his position as a volunteer Planning Board member without just cause, alleging malfeasance by him without any foundation for such a claim.  In doing so, the Defendants conspired to violate Mr. Hewitt's rights of free speech, initiate a malicious civil prosecution, and defame Mr. Hewitt in the eyes of the public.

2.      The City Council correctly found him not guilty of malfeasance and kept him in office.  However, the emotional distress and public humiliation he suffered during his trial based on no substantial evidence has damaged him, and his spouse, Liza Hewitt, in an amount within the jurisdiction of this Court.

Parties

3.      Plaintiffs James and Elizabeth Hewitt, 726 Middle Road, Portsmouth, N.H. 03801

4.      Defendant City of Portsmouth, 1 Junkins Avenue, Portsmouth, N.H. 03801.

5.      Defendant Karen Conard, City Manager, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

6.      Defendant Susan Woodland, Assistant City Manager, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

7.      Defendant Susan Morrell, City Attorney, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

8.      Defendants Deaglan McEachern, Mayor, and John Tabor, Richard Blalock, Katherine Cook, Elizabeth Moreau, and Vincent Lombardi are City Counselors employed at 1 Junkins Avenue, Portsmouth, N.H. 03801.

Jurisdiction and Venue

9.      The Court has jurisdiction of this matter as a claim for damages falling within the scope of RSA 491:7. Venue is appropriate in Rockingham County as the Plaintiffs and all Defendants reside or are employed in Rockingham County.

Facts

10.      James Hewitt was appointed as a volunteer member of the Portsmouth Planning Board for a three term by outgoing Mayor (and member of the City Council) Rick Becksted at the end of Mr. Becksted's term in December 2021.

11.      Mr. Hewitt is a licensed professional civil engineer with decades of experience in land development engineering, municipal water and wastewater, and transportation systems management, planning and zoning.  He was employed by the New Hampshire Department of Transportation during the time he served on the Planning Board.

12.      At the time of Mr. Hewitt's appointment in December 2021, City Council elections had been held a month earlier in November 2021, and a new slate of City Council members had been elected.  Mr. Hewitt had actively worked to defeat all nine of the newly elected City Council members, including the new Mayor, Deaglan McEachern.  The new slate of City Council members took office in January 1, 2022, around the same that Mr. Hewitt assumed his role as a new volunteer Planning Board member.

13.     During the 2021 City Council election, Mr. Hewitt had been politically active in an organization known as the Portsmouth Citizen Alliance which sought to defeat all nine of the winning members of the 2021 City Council election, including the new Mayor, because he was opposed to the direction that the new City Council intended to take the City of Portsmouth.

14.     Following the election and Mr. Hewitt's appointment, Assistant City Manager Susanne Woodland strongly advised outgoing Mayor Rick Becksted not to nominate Mr. Hewitt. She said Mr. Becksted was going to "ruin his future political career" if he went through with putting Mr. Hewitt on the Planning Board.

15.     Later in December 2021 or early in January 2022, before he had sworn in, Portsmouth Department of Public Works Director Peter Rice called Mr. Hewitt's direct supervisor at NHDOT, Brian Schutt, asking if NHDOT had any policies that prohibited NHDOT staff from being on a local planning board.

16.     Despite these pressures, and believing that he had a voice and a mandate due to his having been duly appointed, Mr. Hewitt swore in as a volunteer Planning Board member in January 2022.

17.     Mr. Hewitt had not the slightest objection to the thoughtful development of the City, whether it be increased housing, more buildings, or more activity.  However, he made no secret of the fact that he believed that, in some cases, the City was being developed imprudently, with the approval of sites and buildings taking place without sufficient parking or with significant environmental concerns.  He believed that these legitimate concerns were not being addressed or mitigated through land use department approval conditions.

18.     His appointment to the Planning Board by the previous mayor and council reflected an implicit understanding that he had these perspectives on the City's development and that these were valuable perspectives to have on the Planning Board as the City grew and changed.

19.     Mr. Hewitt believed that the Planning Department and other City Hall staff, including the City Attorney's Office and the City Manager, were circumventing citizen review of development projects by working out plans with developers outside the public hearing process, limiting the information made available to citizen land use board members at the time developers sought project approval at land use board meetings.

20.     While the City's approach to limiting information made available to land use boards may or may not have been lawful, Mr. Hewitt was opposed to it.  In Mr. Hewitt's opinion, the lack of relevant information being provided to Planning Board members by City Planning Department staff was harming the public by allowing projects to move forward without including all the information the Planning Board needs to make an informed decision.

21.     In essence, Mr. Hewitt believed that the City's professional land use and development staff were boxing out the citizen board members from information necessary to informed decision-making.  Mr. Hewitt believed that citizen land use boards needed to assert their authority, because they had become, to a substantial extent, merely a box-checking exercise once the City's planning and legal teams had completed their work.

22.     While these concerns animated Mr. Hewitt's desire to join the Planning Board, they were fundamentally process issues that he believed would make the process of land use board consideration of proposals more complete and more responsive to the public.  He

5

considered every issue on the merits of the evidence, and indeed, voted to approve 95% of the applications that were heard by the Portsmouth Planning Board during his tenure, subject to appropriate conditions as necessary.

23.     From January 2022 to January 2024, Mr. Hewitt served the City of Portsmouth faithfully as a volunteer Planning Board member and had eleven months remaining on his three-year term when the Defendants sought to remove him from the Planning Board.

24.     The City of Portsmouth attempted to remove Mr. Hewitt by asking the City Council on January 16, 2024 for a "Public Hearing Pursuant to RSA 673:13 for the Removal of James Hewitt from the Planning Board." *See* Portsmouth City Council Agenda January 16, 2024.

25.     On January 16, 2024, Defendant City Council members Mayor McEachern, Tabor, Moreau, Blalock, Lombardi and Cook voted to hold the requested removal hearing. City Council members Denton and Bagley did not support the request. Assistant Mayor Kelley was absent on January 16, 2024 at the City Council meeting.

26.     On information and belief, on January 25, 2024 the City Attorney, under the direction and or/coordination with the City Manager and Susan Woodward, filing a "Charging Document" in public as part of the City Council agenda for the removal hearing.

27.     The "Charging Document," an indictment in all but name, was entitled, "Malfeasance in Office" and alleged that Mr. Hewitt, in the course of his duties as a Board member, sent eight emails over two years to the city planning and zoning department and to other board members seeking information or providing information about projects then under consideration before the Planning Board. The Defendants claimed that these emails showed that

he "acted as an independent investigator, researcher and advocate, thereby exhibiting bias in certain matters." *See* Charging Document.

28.    The January 25, 2024 Charging Document was an itemization of alleged acts of malfeasance by Mr. Hewitt and should have been reviewed, discussed and voted by the City Council as a personnel matter in a non-public session as required by RSA 91-A:3. Having these allegations of malfeasance presented to the public as fact in the City Council meeting packet and made widely available on the internet on January 25, 2024 caused Mr. Hewitt to be falsely maligned, disparaged and defamed. Neither the Charging Document nor any part of the City Council's meeting packet for the special meeting set for February 12, 2024 included Mr. Hewitt's responses to the charges. The City gave Mr. Hewitt no equivalent means of publicly answering the groundless allegations. They sat in the public square for eighteen days while Mr. Hewitt had to remain silent.

29.    On February 8, 2024, Mr. Hewitt's counsel provided answers and an accompanying memorandum in response to the Charging Document ostensibly to be provided to the City Council in anticipation of the February 12, 2024 hearing to remove him. The material provided to the City Council in advance of the hearing by the City's professional staff included the Charging Document and relevant exhibits, but included only a hyperlink to the documents provided by Mr. Hewitt, including his answers to the charges. At no point prior to the February 12, 2024 hearing was Mr. Hewitt able to publicly rebut the City's unfounded charges on the City of Portsmouth website.

30.    In the Charging Documents, the City alleged that Mr. Hewitt sent or received emails and sought information from sources it deemed irrelevant to different project applications.

It deemed his efforts to bring more information about the projects seeking approval into the public deliberation "improper" and accused him of violating the "jury standard."

31.     The entire basis of the Defendant's justification to remove Mr. Hewitt from the Planning Board lacked probable cause and was a gross misapplication and abuse of the law. The Defendant's basis for Mr. Hewitt's removal relied exclusively on RSA 673:14, which is the basis for a land use board member to recuse themselves from a particular case and has no relevance to removal from office.  RSA 673:13 is the only appropriate law to justify the removal of a land use board member.

32.     In fact, the emails in question were well within his authority as a Board member and did not create the reality or impression of bias.

33.     In addition, the City alleged that his effort to obtain *public information* about his neighbor's compliance with the City's permit conditions for an approved project was an abuse of his power as a board member.

34.     News of these "charges" against Mr. Hewitt spread widely in Portsmouth, garnering substantial traditional press and online media coverage, and extensive community discussion on social media.

35.     While the emails may or may not have conformed with what the City would have wanted to see in an email communication, they were not a violation of New Hampshire law, nor were they malfeasant as a matter of law.  In fact, there was no probable cause to allege malfeasance based on Mr. Hewitt's diligent effort to be a competent Planning Board member. And yet, this would not have been the understanding of a reasonable citizen who heard only that Mr. Hewitt had been accused of bias and malfeasance.

36.     These public allegations of malfeasance and media coverage caused Mr. Hewitt and Ms. Hewitt, a loving couple married for 36 years, to suffer deep emotional distress.

37.     Mr. and Mrs. Hewitt experienced anxiety, tears, sleeplessness, restlessness, nausea, high sensitivity, depression and despondency before, during and after these proceedings.

38.     After 11 hours of public hearings over two consecutive nights, with testimony from multiple witnesses and argument from counsel, the City Council acquitted Mr. Hewitt of malfeasance by a vote of 7-1.

39.     To this day eighteen months later, Mr. and Mrs. Hewitt remain distressed and disturbed by the reckless manner in which the city callously maligned Mr. Hewitt's public reputation, and their distress continues to cause tears, sleeplessness, anxiety and reluctance to appear in public.

### Count I: Malicious Civil Prosecution

40.     The foregoing paragraphs are incorporated herein.

41.     In order to prevail on a civil malicious prosecution claim, the plaintiff must prove: (1) that he was subjected to a civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) that the proceedings terminated in the plaintiff's favor. *Paul v. Sherburne*, 153 N.H. 747, 749 (2006).

42.     Mr. Hewitt was subjected to a civil proceeding instituted by the Defendants in an effort to remove him from office.

43.     The Defendants, when they initiated the underlying removal action against Mr. Hewitt, did not possess such a knowledge of facts as would lead a person of ordinary caution or prudence to believe that they had a cause of action against Mr. Hewitt.

44.     The Defendants initiated the underlying removal action pretextually, with actual malice, because they knew, or were indifferent to the truth of the matter, or should have harbored substantial doubts, that their grounds for doing so were insufficient to create probable cause.

45.     The Defendants initiated the underlying removal action pretextually, because Mr. Hewitt was appointed by the previous Mayor, both of whom were political opponents of the elected official Defendants, and was providing unwelcome (to them) public scrutiny of the City's development decision-making.

46.     Mr. Hewitt obtained a favorable result from the trier of fact, the City Council.

47.     While Mr. Hewitt appreciates that result and believes it was the proper decision, the near-unanimous vote, in addition to the decision itself, underscores how the removal hearing lacked probable cause and was undertaken with malice.

48.     As a consequence of the Defendant's actions, individually and collectively, Mr. Hewitt has been damaged in an amount within the jurisdiction of the Court.

## Count II: Defamation and Defamation *Per Se*

49.     The foregoing paragraphs are incorporated by reference.

50.     In *Carpenter v. Bailey*, 56 N.H. 283 (1876) recognized a cause of action for libel from the promulgation of a removal proceeding that lacked probable cause.

51.      The Charging Document and related removal hearing were libelous because they degraded, injured and brought Mr. Hewitt into contempt and ridicule, and accused him of the odious or disgraceful act of malfeasance.

52.     The Charging Document and related removal hearing were not published on a lawful occasion because instead of acting in good faith, the Defendant acted pretextually, using

the removal hearing as a pretense to circulate defamatory matter about Mr. Hewitt, whose views and approach to public service the City opposed.

53.     The Charging Documents and the removal hearing did not assert truthful allegations of malfeasance, but rather, at best, modest incompatibility with the City's preference for email communications.

54.     The Charging Documents and the removal hearing were not made in good faith, with a belief founded on reasonable grounds of their truth, because no reasonable person could conclude that Mr. Hewitt's handful of communications were "malfeasance" under any reasonable definition of the word, let alone the legal definitions of the word as applied in actual cases of malfeasance.

55.     The Defendants acted with legal and actual malice towards Mr. Hewitt by asserting that the emails and communications in question were "malfeasance" when they knew, or should have harbored serious doubts about, that the emails and communications in question were not malfeasant.

56.     As a consequence of the City's intentional or reckless or negligent words, Mr. Hewitt has suffered damages *per se* to his reputation as an appointed public land use board member in an amount within the jurisdiction of the Court.

57.     As a consequence of the City's intentional or reckless or negligent words, Mr. Hewitt has suffered special and general damages from the damage to his reputation as an individual and a public servant, in an amount within the jurisdiction of the Court.

### Count III: Intentional and/or Negligent Infliction of Emotional Distress

58.     The foregoing paragraphs are incorporated herein.

59.     The Plaintiffs, Mr. and Mrs. Hewitt, are a married couple.  They raised three sons together over 36 years of marriage, co-habitation, common labor and common purpose.

60.     Mr. and Mrs. Hewitt have experienced, in addition to special and general damages and pain and suffering, specific emotional distress arising from the Defendants' negligent, reckless or intentional statements and prosecutorial actions.

61.     Their emotional distress has manifested itself through physical symptoms, for each of them, of sleeplessness, heartburn, nausea, headaches, distraction, jumpiness, fear, anxiety and other symptoms.

62.     The Defendants' Charging Document and removal hearing were negligent, intentional or reckless statements and/or acts, that were, *inter alia*, unsupported by legal authority.

63.     The Defendants' Charging Document and removal hearing were extreme and outrageous acts or statements.

64.     The Defendants' Charging Document and removal hearing caused the Plaintiffs to suffer severe emotional distress, both directly by Mr. Hewitt and indirectly and vicariously by Ms. Hewitt, who had to stand by and watch the City smear and disparage her husband of 36 years.

65.     As a consequence of the Defendants' conduct, the Plaintiffs have suffered emotional distress with physical symptoms, and/or severe emotional distress, entitling them to damages in an amount within the jurisdiction of the Court.

### Count IV: Enhanced Compensatory Damages, Attorney's Fees and Costs

66.     The foregoing paragraphs are incorporated herein.

67. Under New Hampshire law, a jury may award enhanced compensatory damages when the Defendants' acts were "oppressive, wanton or malicious." *Panas v. Harakis*, 129 N.H. 591 (1987).

68. The nature of the Defendants' statements in the Charging Document and the removal hearing was oppressive, wanton and malicious. Therefore, the Plaintiffs are entitled to enhanced compensatory damages.

69. In addition, the Plaintiffs are entitled to attorney's fees for bad faith conduct. *See* RSA 507:15; *Harkeem v. Adams*, 177 N.H. 687 (1977); *Funtown USA, Inc. v. Town of Conway*, 129 N.H. 352 (1987) (awarding fees not just for conduct during the pendency of litigation, but for pre-litigation vexatiousness).

## Count V: Claims under 42 U.S.C. §1983

70. The foregoing paragraphs are incorporated herein.

71. The attempt by the Defendants to have Mr. Hewitt removed from his public office was a violation of his First Amendment right to speak on issues of public concern. The victim of such a violation may seek recovery under 42 U.S.C. ¶1983.

72. Mr. Hewitt was a public employee for the purposes of §1983. "A public employee's retaliation claims for engaging in activity protected by the First Amendment must be evaluated under a three-step process. First, the plaintiff must establish that the activity in question was protected. For this purpose, the plaintiff must speak as a citizen on a matter of public concern. The plaintiff then must demonstrate that his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it

provides through its employees." *Snelling v. City of Claremont*, 155 N.H. 674, 678 (2007) (citations omitted).

73.    Mr. Hewitt meets this test because his speech was protected and his interest in being able to speak outweighed any interest the City of Portsmouth had in the format and content of his emails.

74.    Second, the Plaintiff must show that the protected activity was a motivating factor in the alleged retaliatory action. *Id*. Mr. Hewitt's emails and communications, which constituted only an effort to fully discharge his duties, are protected by the First Amendment and were, in fact, the basis of the Defendants' Charging Document and removal hearing.

75.    The Defendants cannot rebut the Plaintiffs' claims by demonstrating that it would have reached the same decision absent the protected conduct because the protected conduct was the ground for the Defendants Charging Document and removal hearing.

76.    As the Defendant City's conduct prior to Mr. Hewitt's appointment demonstrates, the Defendant professional staff members of the City of Portsmouth opposed his appointment and attempted to intervene in overt and covert ways to prevent it, including lobbying Mayor Becksted not to appoint Mr. Hewitt and contacting Mr. Hewitt's employer in a communication that can only be viewed as implicitly threatening.

77.    As a consequence of the City's violation of Mr. Hewitt's First Amendment rights, Mr. Hewitt has been damaged in an amount within the jurisdiction of the Court, entitling him to damages, punitive damages, attorneys' fees and costs.  42 U.S.C. §1983; 42 U.S.C. §1988.

78.    THE PLAINTIFFS REQUEST A JURY TRIAL.

WHEREFORE, the Plaintiffs request that the Court:

A.  Hold a jury trial in this matter;

B.  Award damages and enter judgment in an amount within the jurisdiction of the Court;

C.  Grant such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

JAMES AND ELIZABETH HEWITT

By their Attorneys,

ORR & RENO, P.A.

Date:  August 20, 2025          By:      /s/ Jeremy D. Eggleton
                                         Jeremy D. Eggleton, Esq.
                                         (NH Bar No. 18170)
                                         45 S. Main Street, Suite 400
                                         P.O. Box 3550
                                         Concord, NH  03302-3550
                                         Phone:  603-224-2381
                                         Fax:  603-224-2318
                                         jeggleton@orr-reno.com

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS.                                    SUPERIOR COURT

Case No. _218-2025-CV-00955_

James and Elizabeth Hewitt
726 Middle Road
Portsmouth, NH  03801

v.

City of Portsmouth, NH
1 Junkins Avenue
Portsmouth, NH  03801

&

Karen Conard, City Manager
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Morrell, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Woodland, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Mayor Deaglan McEachern, City Councilors John Tabor, Vincent Lombardi,
Richard Blalock, Elizabeth Moreau, Katherine Cook
1 Junkins Avenue
Portsmouth, NH  03801

**APPEARANCE**

True Copy Attest

*Patrice Touma*

Patrice D. Touma
Clerk of Court
September 19, 2025

1

This is a Service Document For Case: 218-2025-CV-00955
Rockingham Superior Court
9/22/2025 11:29 AM

| **APPEARANCE** | **WITHDRAWAL** |
|---|---|
| Please enter my appearance as: | Please withdraw my appearance as: |
| X  Counsel for:  **James & Elizabeth Hewitt**<br>**726 Middle Road**<br>**Portsmouth, NH  03801**<br><br>_____Pro se | ___ Counsel for<br>____ Pro se |

Respectfully Submitted,

JAMES AND ELIZABETH HEWITT

By their Attorneys,

ORR & RENO, P.A.


Date:  August 20, 2025                    By:        _/s/ Jeremy D. Eggleton_____

Jeremy D. Eggleton, Esq.
(NH Bar No. 18170)
45 S. Main Street, Suite 400
P.O. Box 3550
Concord, NH  03302-3550
Phone:  603-224-2381
Fax:  603-224-2318
jeggleton@orr-reno.com

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS.                                    SUPERIOR COURT

Case No. 218-2025-CV-00955

James and Elizabeth Hewitt
726 Middle Road
Portsmouth, NH  03801

v.

City of Portsmouth, NH
1 Junkins Avenue
Portsmouth, NH  03801

&

Karen Conard, City Manager
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Morrell, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Woodland, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Mayor Deaglan McEachern, City Councilors John Tabor, Vincent Lombardi,
Richard Blalock, Elizabeth Moreau, Katherine Cook
1 Junkins Avenue
Portsmouth, NH  03801



True Copy Attest

Patrice D. Touma
Clerk of Court
September 19, 2025

## **APPEARANCE**

1

This is a Service Document For Case: 218-2025-CV-00955
Rockingham Superior Court
9/22/2025 11:29 AM

| APPEARANCE | WITHDRAWAL |
|---|---|
| Please enter my appearance as: | Please withdraw my appearance as: |
| X  Counsel for:  **James & Elizabeth Hewitt**<br>            **726 Middle Road**<br>            **Portsmouth, NH  03801**<br><br>_____Pro se | ___ Counsel for<br>_____ Pro se |

Respectfully Submitted,

JAMES AND ELIZABETH HEWITT

By their Attorneys,

ORR & RENO, P.A.

Date:  August 20, 2025                    By:        */s/ Michaela B. Dunn*
                                                    Michaela B. Dunn, Esq.
                                                    (NH Bar No. 277374)
                                                    45 S. Main Street, Suite 400
                                                    P.O. Box 3550
                                                    Concord, NH  03302-3550
                                                    Phone:  603-224-2381
                                                    Fax:  603-224-2318
                                                    mdunn@orr-reno.com

2

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov



True Copy Attest



Patrice D. Touma

Clerk of Court

September 19, 2025

## SUMMONS IN A CIVIL ACTION



Case Name:    **James Hewitt, et al v City of Portsmouth, NH, et al**
Case Number:   **218-2025-CV-00955**

Date Complaint Filed: August 20, 2025

A Complaint has been filed against City Councilor Elizabeth Moreau; City Councilor John Tabor; City Councilor Katherine Cook; City Councilor Richard Blalock ; City Councilor Vincent Lombardi; City of Portsmouth, NH; Karen Conard, City Manager; Mayor Deaglan McEachern; Susan Morrell, City Attorney; Susan Woodland, City Attorney in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| October 05, 2025 | James Hewitt; Elizabeth Hewitt shall have this Summons and the attached Complaint served upon City Councilor Elizabeth Moreau; City Councilor John Tabor; City Councilor Katherine Cook; City Councilor Richard Blalock ; City Councilor Vincent Lombardi; City of Portsmouth, NH; Karen Conard, City Manager; Mayor Deaglan McEachern; Susan Morrell, City Attorney; Susan Woodland, City Attorney by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| October 26, 2025 | James Hewitt; Elizabeth Hewitt shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | City Councilor Elizabeth Moreau; City Councilor John Tabor; City Councilor Katherine Cook; City Councilor Richard Blalock ; City Councilor Vincent Lombardi; City of Portsmouth, NH; Karen Conard, City Manager; Mayor Deaglan McEachern; Susan Morrell, City Attorney; Susan Woodland, City Attorney must electronically file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to City Councilor Elizabeth Moreau; City Councilor John Tabor; City Councilor Katherine Cook; City Councilor Richard Blalock ; City Councilor Vincent Lombardi; City of Portsmouth, NH; Karen Conard, City Manager; Mayor Deaglan McEachern; Susan Morrell, City Attorney; Susan Woodland, City Attorney:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
  Jeremy D. Eggleton, ESQ          Orr & Reno PA PO Box 3550 Concord NH  03302-3550
  Michaela Dunn, ESQ               Orr & Reno PA PO Box 3550 Concord NH  03302-3550

NHJB-2678-Se (07/01/2018)

| | |
|---|---|
| City of Portsmouth, NH | 1 Junkins Avenue Portsmouth NH  03801 |
| Karen Conard, City Manager | 1 Junkins Avenue Portsmouth NH  03801 |
| Susan Morrell, City Attorney | 1 Junkins Avenue Portsmouth NH  03801 |
| Susan Woodland, City Attorney | 1 Junkins Avenue Portsmouth NH  03801 |
| Mayor Deaglan McEachern | 1 Junkins Avenue Portsmouth NH  03801 |
| City Councilor John Tabor | 1 Junkins Avenue Portsmouth NH  03801 |
| City Councilor Vincent Lombardi | 1 Junkins Avenue Portsmouth NH  03801 |
| City Councilor Richard Blalock | 1 Junkins Avenue Portsmouth NH  03801 |
| City Councilor Elizabeth Moreau | 1 Junkins Avenue Portsmouth NH  03801 |
| City Councilor Katherine Cook | 1 Junkins Avenue Portsmouth NH  03801 |

BY ORDER OF THE COURT

August 21, 2025

Patrice D. Touma
Clerk of Court

(1082)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## JAMES HEWITT; ELIZABETH HEWITT
## INSTRUCTIONS FOR SERVICE
## BY THE SHERIFF'S DEPARTMENT

Case Name:     **James Hewitt, et al v City of Portsmouth, NH, et al**
Case Number:   **218-2025-CV-00955**

**Instructions for:** **James Hewitt; Elizabeth Hewitt**

The attached Summons must be sent to the Sheriff's Department for service.  Service must be completed on or before **October 05, 2025**.
**Further action is required by you**
**You must:**
- **Print two copies of the Summons per defendant**
- **Print two copies of the Notice to Defendant per defendant**
- **Print two copies of the Complaint filed with the Court per defendant**
- **Make two packets for service.  Each packet should contain:**
  - **One Summons**
  - **Once Notice for Defendant**
  - **One Complaint filed with the Court**
- **Mail or hand deliver the packets to the Sheriff's Department in the county where each defendant resides.**

**Sheriff Departments in New Hampshire:**

Belknap County Sheriff's Department:                Hillsborough County Sheriff's Department:
Carroll County Sheriff's Department:                 Merrimack County Sheriff's Department:
Cheshire County Sheriff's Department:                Rockingham County Sheriff's Department:
Coos County Sheriff's Department:                    Strafford County Sheriff's Department:
Grafton County Sheriff's Department:                 Sullivan County Sheriff's Department:

**\*If one or more of the parties resides out of state, please click here for the requirements\***
Service must be made upon the defendant before **October 05, 2025**.


If the Sheriff is unable to complete service by **October 05, 2025** you will receive a "Notice of Incomplete Service" from the Sheriff's Department.  You may request that new paperwork be issued by electronically filing a Request for Documents.  There is a fee for this request.


The Sheriff will mail the 'Return of Service' to you.  You MUST electronically file the 'Return of Service' with the court by October 26, 2025.


**If service is not made as directed, no further action will occur and the case may be dismissed by the court.**

NHJB-2678-Se (07/01/2018)

# Important Service Information for Sheriff

<u>Do not file this with the court</u>
Provide this information to the Sheriff's Department.
See Instructions for Service for more information.
**PLEASE PRINT CLEARLY**

Date: _____    Case #: _____

<u>**Who are you requesting to be served?**</u>
Please provide whatever information you know

Name: _____

Address for service (no P.O. boxes):

_____    APT #: _____

_____

Home phone #: _____    Cell phone #: _____

Sex: ☐ Male   ☐ Female       Race: _____

Last 4 digits of SS#: xxx-xx- ____  ____  ____  ____      D.O.B. _____

Work name & address:

_____

Special instructions for service (i.e. directions, best time to serve, cautions, etc.):

_____

_____

Vehicle description/license plate:

_____

<u>**Your Information:**</u>
Name (please print): _____

Residential address:                    Mailing address:

_____    _____

_____    _____

Phone number to contact you during business hours:

_____ Alternate #: _____

_____
Signature

◆**IN-HAND SERVICE WILL INCUR EXTRA COSTS DUE TO ADDITIONAL TRAVEL**◆

**SHERIFF OFFICE USE ONLY: (This will vary by Sheriff's Office)**

| Fees Paid: $_____ Cash #: _____ Check#: _____ |
|---|
| Id#: _____ Waiver: _____ Money Order#: _____ Credit Card: _____ |
| Sheriff File # _____ Authorization #: _____ |

NHJB-2678-Se (07/01/2018)

Instructions for filing the Return of Service:

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.nh.gov, select the Electronic Services icon and then select the option for a self-represented party.

1. Select "I am filing into an existing case".  Enter 218-2025-CV-00955 and click Next.

2. When you find the case, click on the link follow the instructions on the screen.  On the "What would you like to file?" screen, select "File Other Document" and choose "Return of Service".

3. Scan the Return of Service packet and follow the instructions in the electronic filing program to upload the Return of Service to complete your filing.

4. If the sheriff was unable to serve the paperwork, you can request new paperwork by filing a Request for Documents.  On the "What would you like to file?" screen, select "File Other Document" and choose "Request for Reissued Summons" from the menu and upload the Request for Documents form.


**FAILURE TO FILE THESE DOCUMENTS MAY RESULT IN YOUR CASE BEING DISMISSED.**

August 21, 2025_____        Patrice D. Touma_____
Date                                 Clerk of Court

You can access documents electronically filed through our Case Access Portal by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case.  After your information is validated by the court, you will be able to view case information and documents filed in your case.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## NOTICE TO DEFENDANT

Case Name:        **James Hewitt, et al v City of Portsmouth, NH, et al**
Case Number:      **218-2025-CV-00955**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Rockingham Superior Court.**  Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.nh.gov, select the Electronic Services icon and then select the option for a self-represented party.

1. Complete the registration/log in process.  Click Register and follow the prompts.

2. After you register, click Start Now.  Select **Rockingham Superior Court** as the location.

3. Select "I am filing into an existing case".  Enter **218-2025-CV-00955** and click Next.

4. When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.

5. Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.nh.gov.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

218-2025-CV-00955

_____

|  |  |
|---|---|
| James and Elizabth Hewitt, | ) |
|  | ) |
| Plaintiffs | ) |
| v. | ) |
|  | ) |
| City of Portsmouth, Karen Conard, | ) |
| Susan Morrell, Susan Woodland, | ) |
| Mayor Deaglan McEachern, | ) |
| City Councilors John Tabor, Vincent | ) |
| Lombardi, Richard Blalock, Elizabeth | ) |
| Moreau, and Katherine Cook | ) |
|  | ) |
| Defendants | ) |
|  | ) |

Civil Action No._____

JURY TRIAL DEMANDED

## **NOTICE OF REMOVAL TO CLERK OF COURT**

**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1441 (Federal Question – 28 U.S.C. § 1331); AND 28 U.S.C. § 1446 (Procedure for Removal)**

Defendants City of Portsmouth, Karen Conard, Susan Morrell, Susan Woodland, Mayor Deaglan McEachern, John Tabor, Vincent Lombardi, Richard Blalock, Elizabeth Moreau, and Katherine Cook submit this Notice of Removal pursuant to 28 U.S.C. § 1441(a) (Federal Question – 28 U.S.C. § 1331), and 28 U.S.C. § 1446 (Procedure for Removal), and state the following:

1. Plaintiff commenced a state court action entitled *James Hewitt, et al. v. City of Portsmouth, et al.,* Rockingham County Superior Court, Docket No. 218-2025-CV-00955. Undersigned counsel filed an acceptance of service on behalf of all Defendants on September 18, 2025, of a Complaint dated August 20, 2025. A true and accurate copy of the Complaint is attached hereto as Exhibit A.

True Copy Attest

*Patrice Touma*

Patrice D. Touma

Clerk of Court

September 19, 2025

2.  This civil action is removable under 28 U.S.C. § 1441(a) because Plaintiff alleges violations of federal law, specifically that the Defendants violated 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

3.  The United States District Court for the District of New Hampshire has proper subject matter jurisdiction over, and is the proper venue for, all claims in this action at this time.

4.  The time for removal has not expired.

5.  A copy of this notice of removal has been sent to Plaintiff (Exhibit B) and to the New Hampshire Superior Court, Rockingham County, Northern District (Exhibit C).

6.  A Civil Cover Sheet is filed herewith (Exhibit D).

Respectfully submitted,

**City of Portsmouth, Karen Conard,
Susan Morrell, Susan Woodland,
Mayor Deaglan McEachern,
City Councilors John Tabor, Vincent
Lombardi, Richard Blalock, Elizabeth
Moreau, and Katherine Cook**

By Their Attorneys,

**Gallagher, Callahan & Gartrell, P.C.**

Dated:  September 18, 2025

By:  /s/ Matthew V. Burrows
Matthew V. Burrows, Esq. (#20914)
214 North Main Street
Concord, NH  03301
(603) 545-3643
burrows@gcglaw.com

2

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this filing was served via the Court's electronic filing system upon counsel of record.

Dated:  September 18, 2025         By:  <u>/s/ Matthew V. Burrows</u>

                                           Matthew V. Burrows, Esq. (#20914)

**Filed**
**File Date: 8/20/2025 11:46 AM**
**Rockingham Superior Court**
**E-Filed Document**

**EXHIBIT A**

## STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS.                                        SUPERIOR COURT

Case No.   218-2025-CV-00955

James and Elizabeth Hewitt
726 Middle Road
Portsmouth, NH  03801

v.

City of Portsmouth, NH
1 Junkins Avenue
Portsmouth, NH  03801

&

Karen Conard, City Manager
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Morrell, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Susan Woodland, City Attorney
1 Junkins Avenue
Portsmouth, NH  03801

&

Mayor Deaglan McEachern, City Councilors John Tabor, Vincent Lombardi,
Richard Blalock, Elizabeth Moreau, Katherine Cook
1 Junkins Avenue
Portsmouth, NH  03801

**COMPLAINT AND REQUEST FOR JURY TRIAL**

1

Plaintiffs James and Elizabeth ("Liza") Hewitt complain as follows against the Defendants and request a jury trial:

<u>Introduction</u>

1.      The Defendants, collectively and individually, sought to remove Mr. Hewitt from his position as a volunteer Planning Board member without just cause, alleging malfeasance by him without any foundation for such a claim.  In doing so, the Defendants conspired to violate Mr. Hewitt's rights of free speech, initiate a malicious civil prosecution, and defame Mr. Hewitt in the eyes of the public.

2.      The City Council correctly found him not guilty of malfeasance and kept him in office.  However, the emotional distress and public humiliation he suffered during his trial based on no substantial evidence has damaged him, and his spouse, Liza Hewitt, in an amount within the jurisdiction of this Court.

<u>Parties</u>

3.      Plaintiffs James and Elizabeth Hewitt, 726 Middle Road, Portsmouth, N.H. 03801

4.      Defendant City of Portsmouth, 1 Junkins Avenue, Portsmouth, N.H. 03801.

5.      Defendant Karen Conard, City Manager, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

6.      Defendant Susan Woodland, Assistant City Manager, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

7.      Defendant Susan Morrell, City Attorney, is a current or former employee of the City at 1 Junkins Avenue, Portsmouth, N.H. 03801.

8.     Defendants Deaglan McEachern, Mayor, and John Tabor, Richard Blalock, Katherine Cook, Elizabeth Moreau, and Vincent Lombardi are City Counselors employed at 1 Junkins Avenue, Portsmouth, N.H. 03801.

Jurisdiction and Venue

9.     The Court has jurisdiction of this matter as a claim for damages falling within the scope of RSA 491:7. Venue is appropriate in Rockingham County as the Plaintiffs and all Defendants reside or are employed in Rockingham County.

Facts

10.     James Hewitt was appointed as a volunteer member of the Portsmouth Planning Board for a three term by outgoing Mayor (and member of the City Council) Rick Becksted at the end of Mr. Becksted's term in December 2021.

11.     Mr. Hewitt is a licensed professional civil engineer with decades of experience in land development engineering, municipal water and wastewater, and transportation systems management, planning and zoning.  He was employed by the New Hampshire Department of Transportation during the time he served on the Planning Board.

12.     At the time of Mr. Hewitt's appointment in December 2021, City Council elections had been held a month earlier in November 2021, and a new slate of City Council members had been elected.  Mr. Hewitt had actively worked to defeat all nine of the newly elected City Council members, including the new Mayor, Deaglan McEachern.  The new slate of City Council members took office in January 1, 2022, around the same that Mr. Hewitt assumed his role as a new volunteer Planning Board member.

13.     During the 2021 City Council election, Mr. Hewitt had been politically active in an organization known as the Portsmouth Citizen Alliance which sought to defeat all nine of the winning members of the 2021 City Council election, including the new Mayor, because he was opposed to the direction that the new City Council intended to take the City of Portsmouth.

14.     Following the election and Mr. Hewitt's appointment, Assistant City Manager Susanne Woodland strongly advised outgoing Mayor Rick Becksted not to nominate Mr. Hewitt. She said Mr. Becksted was going to "ruin his future political career" if he went through with putting Mr. Hewitt on the Planning Board.

15.     Later in December 2021 or early in January 2022, before he had sworn in, Portsmouth Department of Public Works Director Peter Rice called Mr. Hewitt's direct supervisor at NHDOT, Brian Schutt, asking if NHDOT had any policies that prohibited NHDOT staff from being on a local planning board.

16.     Despite these pressures, and believing that he had a voice and a mandate due to his having been duly appointed, Mr. Hewitt swore in as a volunteer Planning Board member in January 2022.

17.     Mr. Hewitt had not the slightest objection to the thoughtful development of the City, whether it be increased housing, more buildings, or more activity.  However, he made no secret of the fact that he believed that, in some cases, the City was being developed imprudently, with the approval of sites and buildings taking place without sufficient parking or with significant environmental concerns.  He believed that these legitimate concerns were not being addressed or mitigated through land use department approval conditions.

18.     His appointment to the Planning Board by the previous mayor and council reflected an implicit understanding that he had these perspectives on the City's development and that these were valuable perspectives to have on the Planning Board as the City grew and changed.

19.     Mr. Hewitt believed that the Planning Department and other City Hall staff, including the City Attorney's Office and the City Manager, were circumventing citizen review of development projects by working out plans with developers outside the public hearing process, limiting the information made available to citizen land use board members at the time developers sought project approval at land use board meetings.

20.     While the City's approach to limiting information made available to land use boards may or may not have been lawful, Mr. Hewitt was opposed to it.  In Mr. Hewitt's opinion, the lack of relevant information being provided to Planning Board members by City Planning Department staff was harming the public by allowing projects to move forward without including all the information the Planning Board needs to make an informed decision.

21.     In essence, Mr. Hewitt believed that the City's professional land use and development staff were boxing out the citizen board members from information necessary to informed decision-making.  Mr. Hewitt believed that citizen land use boards needed to assert their authority, because they had become, to a substantial extent, merely a box-checking exercise once the City's planning and legal teams had completed their work.

22.     While these concerns animated Mr. Hewitt's desire to join the Planning Board, they were fundamentally process issues that he believed would make the process of land use board consideration of proposals more complete and more responsive to the public.  He

5

considered every issue on the merits of the evidence, and indeed, voted to approve 95% of the applications that were heard by the Portsmouth Planning Board during his tenure, subject to appropriate conditions as necessary.

23.     From January 2022 to January 2024, Mr. Hewitt served the City of Portsmouth faithfully as a volunteer Planning Board member and had eleven months remaining on his three-year term when the Defendants sought to remove him from the Planning Board.

24.     The City of Portsmouth attempted to remove Mr. Hewitt by asking the City Council on January 16, 2024 for a "Public Hearing Pursuant to RSA 673:13 for the Removal of James Hewitt from the Planning Board." *See* Portsmouth City Council Agenda January 16, 2024.

25.     On January 16, 2024, Defendant City Council members Mayor McEachern, Tabor, Moreau, Blalock, Lombardi and Cook voted to hold the requested removal hearing.  City Council members Denton and Bagley did not support the request.  Assistant Mayor Kelley was absent on January 16, 2024 at the City Council meeting.

26.     On information and belief, on January 25, 2024 the City Attorney, under the direction and or/coordination with the City Manager and Susan Woodward, filing a "Charging Document" in public as part of the City Council agenda for the removal hearing.

27.     The "Charging Document," an indictment in all but name, was entitled, "Malfeasance in Office" and alleged that Mr. Hewitt, in the course of his duties as a Board member, sent eight emails over two years to the city planning and zoning department and to other board members seeking information or providing information about projects then under consideration before the Planning Board.  The Defendants claimed that these emails showed that

6

he "acted as an independent investigator, researcher and advocate, thereby exhibiting bias in certain matters." *See* Charging Document.

28.     The January 25, 2024 Charging Document was an itemization of alleged acts of malfeasance by Mr. Hewitt and should have been reviewed, discussed and voted by the City Council as a personnel matter in a non-public session as required by RSA 91-A:3.  Having these allegations of malfeasance presented to the public as fact in the City Council meeting packet and made widely available on the internet on January 25, 2024 caused Mr. Hewitt to be falsely maligned, disparaged and defamed.  Neither the Charging Document nor any part of the City Council's meeting packet for the special meeting set for February 12, 2024 included Mr. Hewitt's responses to the charges.  The City gave Mr. Hewitt no equivalent means of publicly answering the groundless allegations.  They sat in the public square for eighteen days while Mr. Hewitt had to remain silent.

29.     On February 8, 2024, Mr. Hewitt's counsel provided answers and an accompanying memorandum in response to the Charging Document ostensibly to be provided to the City Council in anticipation of the February 12, 2024 hearing to remove him.  The material provided to the City Council in advance of the hearing by the City's professional staff included the Charging Document and relevant exhibits, but included only a hyperlink to the documents provided by Mr. Hewitt, including his answers to the charges.  At no point prior to the February 12, 2024 hearing was Mr. Hewitt able to publicly rebut the City's unfounded charges on the City of Portsmouth website.

30.     In the Charging Documents, the City alleged that Mr. Hewitt sent or received emails and sought information from sources it deemed irrelevant to different project applications.

It deemed his efforts to bring more information about the projects seeking approval into the public deliberation "improper" and accused him of violating the "jury standard."

31.     The entire basis of the Defendant's justification to remove Mr. Hewitt from the Planning Board lacked probable cause and was a gross misapplication and abuse of the law. The Defendant's basis for Mr. Hewitt's removal relied exclusively on RSA 673:14, which is the basis for a land use board member to recuse themselves from a particular case and has no relevance to removal from office.  RSA 673:13 is the only appropriate law to justify the removal of a land use board member.

32.     In fact, the emails in question were well within his authority as a Board member and did not create the reality or impression of bias.

33.     In addition, the City alleged that his effort to obtain *public information* about his neighbor's compliance with the City's permit conditions for an approved project was an abuse of his power as a board member.

34.     News of these "charges" against Mr. Hewitt spread widely in Portsmouth, garnering substantial traditional press and online media coverage, and extensive community discussion on social media.

35.     While the emails may or may not have conformed with what the City would have wanted to see in an email communication, they were not a violation of New Hampshire law, nor were they malfeasant as a matter of law.  In fact, there was no probable cause to allege malfeasance based on Mr. Hewitt's diligent effort to be a competent Planning Board member. And yet, this would not have been the understanding of a reasonable citizen who heard only that Mr. Hewitt had been accused of bias and malfeasance.

8

36.     These public allegations of malfeasance and media coverage caused Mr. Hewitt and Ms. Hewitt, a loving couple married for 36 years, to suffer deep emotional distress.

37.     Mr. and Mrs. Hewitt experienced anxiety, tears, sleeplessness, restlessness, nausea, high sensitivity, depression and despondency before, during and after these proceedings.

38.     After 11 hours of public hearings over two consecutive nights, with testimony from multiple witnesses and argument from counsel, the City Council acquitted Mr. Hewitt of malfeasance by a vote of 7-1.

39.     To this day eighteen months later, Mr. and Mrs. Hewitt remain distressed and disturbed by the reckless manner in which the city callously maligned Mr. Hewitt's public reputation, and their distress continues to cause tears, sleeplessness, anxiety and reluctance to appear in public.

### Count I: Malicious Civil Prosecution

40.     The foregoing paragraphs are incorporated herein.

41.     In order to prevail on a civil malicious prosecution claim, the plaintiff must prove: (1) that he was subjected to a civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) that the proceedings terminated in the plaintiff's favor.  *Paul v. Sherburne*, 153 N.H. 747, 749 (2006).

42.     Mr. Hewitt was subjected to a civil proceeding instituted by the Defendants in an effort to remove him from office.

43.     The Defendants, when they initiated the underlying removal action against Mr. Hewitt, did not possess such a knowledge of facts as would lead a person of ordinary caution or prudence to believe that they had a cause of action against Mr. Hewitt.

9

44. The Defendants initiated the underlying removal action pretextually, with actual malice, because they knew, or were indifferent to the truth of the matter, or should have harbored substantial doubts, that their grounds for doing so were insufficient to create probable cause.

45. The Defendants initiated the underlying removal action pretextually, because Mr. Hewitt was appointed by the previous Mayor, both of whom were political opponents of the elected official Defendants, and was providing unwelcome (to them) public scrutiny of the City's development decision-making.

46. Mr. Hewitt obtained a favorable result from the trier of fact, the City Council.

47. While Mr. Hewitt appreciates that result and believes it was the proper decision, the near-unanimous vote, in addition to the decision itself, underscores how the removal hearing lacked probable cause and was undertaken with malice.

48. As a consequence of the Defendant's actions, individually and collectively, Mr. Hewitt has been damaged in an amount within the jurisdiction of the Court.

## Count II: Defamation and Defamation *Per Se*

49. The foregoing paragraphs are incorporated by reference.

50. In *Carpenter v. Bailey*, 56 N.H. 283 (1876) recognized a cause of action for libel from the promulgation of a removal proceeding that lacked probable cause.

51. The Charging Document and related removal hearing were libelous because they degraded, injured and brought Mr. Hewitt into contempt and ridicule, and accused him of the odious or disgraceful act of malfeasance.

52. The Charging Document and related removal hearing were not published on a lawful occasion because instead of acting in good faith, the Defendant acted pretextually, using

the removal hearing as a pretense to circulate defamatory matter about Mr. Hewitt, whose views and approach to public service the City opposed.

53.     The Charging Documents and the removal hearing did not assert truthful allegations of malfeasance, but rather, at best, modest incompatibility with the City's preference for email communications.

54.     The Charging Documents and the removal hearing were not made in good faith, with a belief founded on reasonable grounds of their truth, because no reasonable person could conclude that Mr. Hewitt's handful of communications were "malfeasance" under any reasonable definition of the word, let alone the legal definitions of the word as applied in actual cases of malfeasance.

55.     The Defendants acted with legal and actual malice towards Mr. Hewitt by asserting that the emails and communications in question were "malfeasance" when they knew, or should have harbored serious doubts about, that the emails and communications in question were not malfeasant.

56.     As a consequence of the City's intentional or reckless or negligent words, Mr. Hewitt has suffered damages *per se* to his reputation as an appointed public land use board member in an amount within the jurisdiction of the Court.

57.     As a consequence of the City's intentional or reckless or negligent words, Mr. Hewitt has suffered special and general damages from the damage to his reputation as an individual and a public servant, in an amount within the jurisdiction of the Court.

### Count III: Intentional and/or Negligent Infliction of Emotional Distress

58.      The foregoing paragraphs are incorporated herein.

11

59.     The Plaintiffs, Mr. and Mrs. Hewitt, are a married couple.  They raised three sons together over 36 years of marriage, co-habitation, common labor and common purpose.

60.     Mr. and Mrs. Hewitt have experienced, in addition to special and general damages and pain and suffering, specific emotional distress arising from the Defendants' negligent, reckless or intentional statements and prosecutorial actions.

61.     Their emotional distress has manifested itself through physical symptoms, for each of them, of sleeplessness, heartburn, nausea, headaches, distraction, jumpiness, fear, anxiety and other symptoms.

62.     The Defendants' Charging Document and removal hearing were negligent, intentional or reckless statements and/or acts, that were, *inter alia*, unsupported by legal authority.

63.     The Defendants' Charging Document and removal hearing were extreme and outrageous acts or statements.

64.     The Defendants' Charging Document and removal hearing caused the Plaintiffs to suffer severe emotional distress, both directly by Mr. Hewitt and indirectly and vicariously by Ms. Hewitt, who had to stand by and watch the City smear and disparage her husband of 36 years.

65.     As a consequence of the Defendants' conduct, the Plaintiffs have suffered emotional distress with physical symptoms, and/or severe emotional distress, entitling them to damages in an amount within the jurisdiction of the Court.

### Count IV: Enhanced Compensatory Damages, Attorney's Fees and Costs

66.     The foregoing paragraphs are incorporated herein.

67.     Under New Hampshire law, a jury may award enhanced compensatory damages when the Defendants' acts were "oppressive, wanton or malicious." *Panas v. Harakis*, 129 N.H. 591 (1987).

68.     The nature of the Defendants' statements in the Charging Document and the removal hearing was oppressive, wanton and malicious.  Therefore, the Plaintiffs are entitled to enhanced compensatory damages.

69.     In addition, the Plaintiffs are entitled to attorney's fees for bad faith conduct.  *See* RSA 507:15; *Harkeem v. Adams*, 177 N.H. 687 (1977); *Funtown USA, Inc. v. Town of Conway*, 129 N.H. 352 (1987) (awarding fees not just for conduct during the pendency of litigation, but for pre-litigation vexatiousness).

### Count V: Claims under 42 U.S.C. §1983

70.     The foregoing paragraphs are incorporated herein.

71.     The attempt by the Defendants to have Mr. Hewitt removed from his public office was a violation of his First Amendment right to speak on issues of public concern.  The victim of such a violation may seek recovery under 42 U.S.C. ¶1983.

72.     Mr. Hewitt was a public employee for the purposes of §1983.  "A public employee's retaliation claims for engaging in activity protected by the First Amendment must be evaluated under a three-step process. First, the plaintiff must establish that the activity in question was protected. For this purpose, the plaintiff must speak as a citizen on a matter of public concern. The plaintiff then must demonstrate that his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it

provides through its employees." *Snelling v. City of Claremont*, 155 N.H. 674, 678 (2007) (citations omitted).

73.     Mr. Hewitt meets this test because his speech was protected and his interest in being able to speak outweighed any interest the City of Portsmouth had in the format and content of his emails.

74.     Second, the Plaintiff must show that the protected activity was a motivating factor in the alleged retaliatory action.  *Id*.  Mr. Hewitt's emails and communications, which constituted only an effort to fully discharge his duties, are protected by the First Amendment and were, in fact, the basis of the Defendants' Charging Document and removal hearing.

75.     The Defendants cannot rebut the Plaintiffs' claims by demonstrating that it would have reached the same decision absent the protected conduct because the protected conduct was the ground for the Defendants Charging Document and removal hearing.

76.     As the Defendant City's conduct prior to Mr. Hewitt's appointment demonstrates, the Defendant professional staff members of the City of Portsmouth opposed his appointment and attempted to intervene in overt and covert ways to prevent it, including lobbying Mayor Becksted not to appoint Mr. Hewitt and contacting Mr. Hewitt's employer in a communication that can only be viewed as implicitly threatening.

77.     As a consequence of the City's violation of Mr. Hewitt's First Amendment rights, Mr. Hewitt has been damaged in an amount within the jurisdiction of the Court, entitling him to damages, punitive damages, attorneys' fees and costs.  42 U.S.C. §1983; 42 U.S.C. §1988.

78.     THE PLAINTIFFS REQUEST A JURY TRIAL.

WHEREFORE, the Plaintiffs request that the Court:

A.   Hold a jury trial in this matter;

B.   Award damages and enter judgment in an amount within the jurisdiction of the Court;

C.   Grant such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

JAMES AND ELIZABETH HEWITT

By their Attorneys,

ORR & RENO, P.A.

Date:  August 20, 2025             By:      */s/ Jeremy D. Eggleton*
                                                 Jeremy D. Eggleton, Esq.
                                                 (NH Bar No. 18170)
                                                 45 S. Main Street, Suite 400
                                                 P.O. Box 3550
                                                 Concord, NH  03302-3550
                                                 Phone:  603-224-2381
                                                 Fax:  603-224-2318
                                                 jeggleton@orr-reno.com

EXHIBIT B

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                                        SUPERIOR COURT

Docket No. 218-2025-CV-00955

James Hewitt, et al.

v.

City of Porsmouth, NH, et al.

## **NOTICE OF REMOVAL TO PLAINTIFFS JAMES AND ELIZABETH HEWITT**

To:     James and Elizabeth Hewitt
        c/o Jeremy D. Eggleton, Esq.
        Orr & Reno, P.A.
        45 S. Main St., Suite 400
        P.O. Box 3550
        Concord, NH  03302-3550


        Defendants City of Portsmouth, Karen Conard, Susan Morrell, Susan Woodland, Mayor

Deaglan McEachern, John Tabor, Vincent Lombardi, Richard Blalock, Elizabeth Moreau, and

Katherine Cook, hereby give notice that the civil action entitled *James Hewitt, et al. v. City of*

*Portsmouth, et al.,* Rockingham County Superior Court, Docket No. 218-2025-CV-00955, has been

removed to the United States District Court for the District of New Hampshire.  A copy of that

Notice of Removal and the Notice of Removal to the Rockingham County Superior Court, are

enclosed herewith.

                                Respectfully submitted,

                                **City of Portsmouth, Karen Conard,**
                                **Susan Morrell, Susan Woodland,**
                                **Mayor Deaglan McEachern,**
                                **City Councilors John Tabor, Vincent**
                                **Lombardi, Richard Blalock, Elizabeth**

**Moreau, and Katherine Cook**

By Their Attorneys,

**Gallagher, Callahan & Gartrell, P.C.**

Dated:  September 18, 2025                    By:  /s/ Matthew V. Burrows
                                                Matthew V. Burrows, Esq. (#20914)
                                                214 North Main Street
                                                Concord, NH  03301
                                                (603) 545-3643
                                                burrows@gcglaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served via the Court's electronic filing system upon counsel of record.

Dated:  September 18, 2025                    By:  /s/ Matthew V. Burrows
                                                Matthew V. Burrows, Esq. (#20914)

EXHIBIT C

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                                                    SUPERIOR COURT

Docket No. 218-2025-CV-00955

James Hewitt, et al.

v.

City of Porsmouth, NH, et al.


**NOTICE OF REMOVAL TO ROCKINGHAM COUNTY SUPERIOR COURT**

To:     Patrice Touma, Clerk
        Rockingham County Superior Court
        10 Route 125
        Brentwood, NH  03833

Take notice under 28 U.S.C. §1446 that I have this day filed in the Clerk's Office of the United States District Court for the District of New Hampshire, Concord, New Hampshire, a Notice of Removal of this case.

Pursuant to the Removal, and in accordance with the above statute, the State Court should proceed no further herein unless and until the case is remanded.  A copy of that Notice of Removal and the Notice of Removal to Plaintiff are enclosed herewith.

Respectfully submitted,

**City of Portsmouth, Karen Conard,
Susan Morrell, Susan Woodland,
Mayor Deaglan McEachern,
City Councilors John Tabor, Vincent
Lombardi, Richard Blalock, Elizabeth
Moreau, and Katherine Cook**

By Their Attorneys,

**Gallagher, Callahan & Gartrell, P.C.**

Dated:  September 18, 2025                    By:  /s/ Matthew V. Burrows
                                                  Matthew V. Burrows, Esq. (#20914)
                                                  214 North Main Street
                                                  Concord, NH  03301
                                                  (603) 545-3643
                                                  burrows@gcglaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served via the Court's electronic filing system upon counsel of record.


Dated:  September 18, 2025                    By:  /s/ Matthew V. Burrows
                                                  Matthew V. Burrows, Esq. (#20914)

Case 1:25-cv-00357-SM Document 1-3 Filed 09/18/25 Page 1 of 1

EXHIBIT D

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

James Hewitt and Elizabeth Hewitt

## DEFENDANTS

City of Portsmouth, et al.

**(b)** County of Residence of First Listed Plaintiff    Rockingham
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeremy D. Eggleton, Esq./Orr & Reno, P.A.
45 S. Main St., Ste 400, PO Box 3550, Concord, NH
03302-3550  (603) 224-2381

Attorneys *(If Known)*
Matthew V. Burrows, Esq./Gallagher Callahan & Gartrell, PC
214 North Main St., Concord, NH  03301 (603) 545-3643

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983 and 42 USC 1988

Brief description of cause:
Alleged Violation of First Amendment Rights

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 09/18/2025 | /s/ Matthew V. Burrows (20914) |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**     **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**     **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**     **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**     **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.